# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LISA DAWN SELLARS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-23-288-JAR |
| ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

### OPINION AND ORDER

Plaintiff Lisa Dawn Sellars (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is ordered that the Commissioner's decision be **AFFIRMED**.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42

U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias,

---

[1]   Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

933 F.2d at 800-01.

### Claimant's Background

Claimant was 53 years old at the time of the ALJ's decision. Claimant completed her education through the eleventh grade. (Tr. 269). Claimant previously worked as a gas station cashier. Id. Claimant alleges an inability to work beginning January 1, 2018 due to limitations resulting from bilateral lower extremity radiculopathy, rheumatoid arthritis, degenerative disc disease of the lumbar spine, Sjorgen's syndrome, fibromyalgia, chronic pain syndrome, diabetes mellitus, diabetic peripheral neuropathy, chronic kidney disease stage III, right knee derangement, obesity, polymyositis, equinus contracture of the bilateral ankles, peroneal longus and brevis tenosynovitis of the left ankle, major depressive disorder, anxiety, and post-traumatic stress disorder.

### Procedural History

On March 26, 2021, Claimant protectively filed for Supplemental Security Income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On April 27, 2023, Administrative Law Judge ("ALJ") James L. Bentley conducted an administrative hearing by telephone due to the extraordinary circumstances posed by the COVID-19 pandemic. On May 3, 2023, the ALJ issued an unfavorable decision. On July 3, 2023, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that, while Claimant suffered from a severe impairment, he retained the residual functional capacity ("RFC") to perform light work.

### Error Alleged for Review

Claimant asserts the ALJ erred in (1) failing to apply the correct legal standards when assessing the medical opinions of record; and (2) failing to properly assess Claimant's subjective statement.

### Evaluation of the Medical Opinion Evidence

In his decision, the ALJ determined Claimant suffered from the severe impairments of lumbar spine degenerative disc disease with chronic bilateral lower extremity radiculopathy, rheumatoid arthritis, Sjogren's syndrome, fibromyalgia, right knee derangement, diabetes mellitus type II, diabetic peripheral neuropathy, and chronic kidney disease stage III. (Tr. 33). The ALJ found none of Claimant's alleged conditions met a listing. (Tr. 36-38). As a result of the limitations caused by his severe impairment, Claimant was found to retain the residual functional capacity to perform light work. (Tr. 38). In so doing, the ALJ determined Claimant could occasionally climb ramps and stairs, could not climb ladders or scaffolding, could occasionally stoop, kneel, crouch, and crawl, could frequently, but not constantly, handle and finger bilaterally, and should avoid unprotected heights and dangerous moving machinery. Id. After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of

housekeeping cleaner, merchandise marker, and cashier II, all of which exist in significant numbers in the national economy. (Tr. 55). Consequently, the ALJ concluded that Claimant had not been under a disability since March 26, 2021, the date of the filing of the application. (Tr. 56).

Claimant first contends the ALJ's evaluation of the medical opinions in the case was improper under the Social Security regulations. Claimant was evaluated by several state agency and consultative physicians. Dr. James Blalock evaluated Claimant on June 17, 2021. He determined she suffered from medically determinable impairments but that Claimant's statements about the intensity, persistence, and functionally limiting effects of the symptoms were not substantiated by objective medical evidence. In assessing the consistency of Claimant's statements, Dr. Blalock considered Claimant's activities of daily living, the location, duration, frequency and intensity of Claimant's pain and other symptoms, precipitating and aggravating factors, and medication treatment. (Tr. 94). Claimant's statements were found to be only "partially consistent" with the medical and non-medical evidence on file. He found evidence was lacking to support Claimant's symptoms of limitations. (Tr. 94-95).

In his Physical Residual Functional Capacity assessment, Dr. Blaylock determined Claimant had exertional limitations which allowed her to occasionally lift and/or carry 20 pounds, frequently lift and/or carry ten pounds, stand and/or walk with normal breaks for a total of six hours in an eight hour workday, sit with normal breaks about six hours in an eight hour workday, and engage in unlimited pushing and/or pulling. Claimant was found to have postural limitations

which allowed her to climb ramps and stairs frequently, climb ladders/ropes/scaffolds occasionally, unlimited balancing, occasional stooping, and unlimited kneeling, crouching and crawling. Dr. Blalock found Claimant had no manipulative, visual, communicative, or environmental limitations. Dr. Blalock related the medical record and concluded Claimant had "moderate limitations." (Tr. 95-97).

Dr. Blaylock evaluated Claimant again on February 2, 2022. His functional assessment remained the same with the exception that he found Claimant had manipulative limitations but she could engage in unlimited reaching in any direction including overhead, had limited handling bilaterally, unlimited fingering, and unlimited feeling. Under the area of the form which requires an explanation of the manipulative limitations, Dr. Blalock stated, "gross manipulation occasionally." (Tr. 116-119). On both reports, Claimant was rated as being able to perform light work. (Tr. 99, 120).

On January 22, 2022, Claimant was evaluated by Dr. Shad Bateman. Based upon Claimant's subjective statements, Dr. Bateman found she suffered from rheumatoid arthritis, diabetes, depression/anxiety/PTSD/insomnia, Sjogren's syndrome, and polymyositis. Claimant reported to Dr. Bateman that she had functional limitations secondary to pain and weakness of sitting for 30 minutes, standing for 30 minutes, walking ½ block and lifting and carrying ten pounds repetitively and 20 pounds occasionally. She also reported limitations in manipulating objects and bending and squatting. (Tr. 1181-82).

After examination, Dr. Bateman concluded Claimant had difficulty picking things up and

drops things. Sjogren's syndrome "makes it difficult for her vision". Claimant had difficulty with getting out of her seat from a seated position as well as squatting down to standing back up, needing assistance to do so. She was able to keep her fingers together as Dr. Bateman tried to pull on them testing strength of her had muscles and she was able to do it with time, but due to quick fatigability of her muscles due to polymyositis she had a hard time grasping things for an extended amount of time. Claimant was able to do so for a couple of seconds on physical examination but Dr. Bateman concluded that this did not mean she could do it long-term. She reported she could not really use her hands and arms. Dr. Bateman also noted motion restriction in shoulder flexion as well as abduction. He noted a history of depression and anxiety as well as PTSD and was unable to handle stress or be around a lot of people "which would often make her ability to work quite difficult." (Tr. 1183-84).

On June 10, 2022, Claimant was also evaluated by Dr. Scott Newton. In his physical RFC evaluation, Dr. Newton found Claimant could occasionally lift/carry 20 pounds and frequently lift/carry ten pounds, could engage in unlimited pushing and pulling of the upper and lower extremities, could stand and/or walk for about six hours in an eight hour workday and sit for about six hours in an eight hour workday, could occasionally climb ramps/stairs, never climb ladders/ropes/scaffolding, balance, stoop, kneel, and crouch frequently, and occasionally crawl. He found no manipulative, visual, communicative, or environmental limitations. Dr. Newton proceeded through Claimant's medical diagnosis and treatment records as well as her activities of daily living and concluded that the RFC was supported as written. The basis for the updated RFC

evaluation was neck abscesses which Dr. Newton determined were "successfully treated."  (Tr. 130-32).

On October 4, 2022, Dr. Luther Woodcock also evaluated Claimant's condition and RFC. His RFC findings and medical findings mirrored those of Dr. Newton.   (Tr. 132-35).

The ALJ cited extensively from the medical record and evaluated the opinions of the evaluating physicians.  It would appear that only the opinion of Dr. Bateman stands as inconsistent with the opinions of Drs. Blaylock, Newton, and Woodcock as to Claimant's physical limitations.  The ALJ found Dr. Bateman's opinions "unpersuasive" because, while they were consistent with his examination findings, they were inconsistent with other evidence in the record. On the finding of decreased grip strength, the ALJ cited to numerous medical findings in the record which indicated Claimant's grip strength and manipulation was "normal" and "equal bilaterally." (Tr. 53).  The ALJ also found Dr. Bateman's findings on Claimant's mental impairments to be "supported only by the claimant's statements to Dr. Bateman" and not the overall medical record. Id.  He cited to numerous records in the administrative transcript which supported findings that Claimant was doing relatively well mentally and that her symptoms were well-managed by medication.  (Tr. 52).  As for any vision problems, the ALJ cited to Dr. Bateman's own examination findings and other additional medical findings in the record which supported a conclusion that Claimant did not presently suffer from a vision deficit sufficient to affect her ability to engage in basic work activities.  (Tr. 53).

The ALJ also found the remaining state agency reviewers' opinions "partially persuasive."

(Tr. 54).   He agreed with the limitation to "light" work but restricted Claimant further to only occasional climbing, stooping, kneeling, crouching, and crawling.

He also restricted her to no climbing ladders or scaffolding and to avoiding unprotected heights and dangerous moving machinery due to neuropathy.  No limitations on balancing were noted because Claimant does not use an assistive device and demonstrated an ability to tandem walk and walk on her heels and toes.   On further hand limitations, the ALJ again relied on the "dearth of deficits in grip strength or in gross or fine manipulation" in imposing more than a frequent bilateral handling and fingering limitation on manipulation.   (Tr. 54).

Claimant also challenges the ALJ's findings on her pain assessment.   The ALJ accurately stated the medical evidence concerning the various treatments for pain.   While Claimant frequently reported her pain as "10 out of 10" or similarly intense, the ALJ noted that the medical providers questioned the accuracy of her subjective assessment.[2]   (Tr. 46).   The ALJ also repeatedly cited to records which indicate Claimant's pain is effectively managed by medication. (Tr. 40-47).   To the extent Dr. Bateman's findings on Claimant's pain are inconsistent with these medical findings, the ALJ properly explained his reasoning in finding the opinion inconsistent and unsupported with the medical evidence.

Because Claimant filed her claim after March 27, 2017, the medical opinion evidence in the case is subject to evaluation pursuant to 20 C.F.R. §§ 404.1520c, 416.920c.   Under the revised

---

2  "She is not moving like she has 9/10 pain in back . . . ."   (Tr. 945); "Pt states that her back has progressively gotten worse and rates pain 10/10 today, but is walking and changing positions w/o antalgic deviations."   (Tr. 957); "Does not appear to be 10/10 pain.   She is very interactive and talkative."   (Tr. 1000); "Does not appear to be at 10/10, she is joking and very interactive."   (Tr. 1004); "[N]o acute distress, does not appear to be in stated pain level, laughs at times during conversation."   (Tr. 1080).

regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, he must "articulate" in his decision "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record" by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. Id. However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [he] will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

An ALJ continues to have the duty to evaluate every medical opinion in the record regardless of its source. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). He may not "pick and choose among medical reports, using portions of evidence favorable to his position while

ignoring other evidence." Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004); *see also* Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability").

As noted, the ALJ meticulously and in detail proceeded through the medical record to conclude conflicting medical opinions were inconsistent with the medical evaluation and treatment record and not otherwise supported by medical evidence. This Court cannot conclude that the ALJ's evaluation was inconsistent with the regulations or deficit in addressing the record.

### Evaluation of Claimant's Subjective Statements

Claimant alleges that the ALJ evaluated her subjective statements of limitation and pain under the incorrect regulation (Soc. Sec. R. 96-7p) rather than the newer, correct regulation (Soc. Sec. R. 16-3p). Nothing in the ALJ's opinion indicates this is the case. He based his conclusions as to Claimant's pain and physical limitations upon (1) Claimant's allegations and testimony regarding pain and other symptoms were not entirely consistent with the diagnostic studies, objective clinical examination findings; (2) Claimant had declined suggested treatments on multiple occasions; and (3) other statements Claimant had made regrading her symptoms and activities she could perform despite her allegedly debilitating symptoms. (Tr. 39). The ALJ then proceeded through extensive citations to the medical record and the administrative hearing to demonstrate support for these conclusions.

Effective March 26, 2016, the Social Security Administration issued a new policy interpretation ruling governing the evaluation of symptoms in disability claims. Soc. Sec. R. 16-3p, *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1119029 (Mar. 16,

2016) (superseding Soc. Sec. R. 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 1996 WL 374186 (July 2, 1996)). The purpose of the new policy, which applies to the case at bar, is to "eliminat[e] the use of the term 'credibility' from [the] sub-regulatory policy" and "clarify that subjective symptom evaluation is not an examination of an individual's character." Soc. Sec. R. 16-3p at *1; *see also* Sonnenfeld v. Comm'r, Soc. Sec. Admin., 2018 WL 1556262, at *5 (D. Colo. Mar. 30, 2018) (explaining that "SSR 16-3p is a policy interpretation ruling issued by the Social Security Administration that generally eliminates 'credibility' assessments from the social security disability analysis"). In place of "credibility," the Social Security Administration now utilizes the term "consistency." Specifically, the policy provides that "if an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." Soc. Sec. R. 16-3p at *7. Conversely, if the individual's "statements about his symptoms are inconsistent with the objective medical evidence and other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." Id.; *see also* Sonnenfeld, 2018 WL 1556262, at *5 (explaining that Soc. Sec. R. 16-3p replaces a credibility assessment with an "assessment of the *consistency* of a claimant's statement with the record in its entirety").

Under the new policy, the Social Security Administration continues to evaluate a disability claimant's symptoms using a two-step process:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could

> reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult . . . .
>
> Soc. Sec. R. 16-3p at *2.

With respect to the first inquiry, "[a]n individual's symptoms, . . . will not be found to affect the ability to perform work-related activities for an adult . . . unless medical signs or laboratory findings show a medically determinable impairment is present." Id. at *3. In conducting the second inquiry, the ALJ should examine "the entire case record, including the objective medical evidence; an individual's statements about the . . . symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. at *4.

In accordance with the general standards explained above, the Tenth Circuit has previously stated that an ALJ conducting a "credibility" analysis must consider and determine:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.
>
> Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166–67 (10th Cir. 2012) (citing Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987)).

Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief; a claimant's willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders

13

combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of medication taken by the claimant. Keyes-Zachary, 695 F.3d at 1166–67; *see also* Soc. Sec. R. 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

Credibility/consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting Kepler, 68 F.3d at 391). However, the ALJ's consistency findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (quoting Kepler, 68 F.3d at 391). This pronouncement by the Tenth Circuit echoes the Social Security Administration's policy interpretation regarding what an ALJ must include in his written decision. *See* Soc. Sec. R. 16-3p at *9 ("The [ALJ's] determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."). So long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." Keyes-Zachary, 695 F.3d at 1167. "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." Id.

Claimant's statements concerning her level of pain and limitations are not consistent with the objective medical record. The ALJ's consideration of Claimant's subjective statements with skepticism given the medical record is supported and this Court finds no error in his conclusions.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 30th day of September, 2024.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE